DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
Lawrence A. Larose
Jonathan D. Siegfried
Samuel S. Kohn

Attorneys for Alexey Vasilyevich Grudtsin, as
Bankruptcy Trustee and Foreign Representative of
CJSC Automated Services (a/k/a ZAO
Automated Services)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re: : Chapter 15
:
Petition of Alexey Vasilyevich Grudtsin, as : Case No. 09 - 16064 (JMP)
Bankruptcy Trustee and Foreign Representative of :
CJSC AUTOMATED SERVICES (a/k/a ZAO :
AUTOMATED SERVICES) :
:
Debtor. :
:
------------------------------------------------------------x

**VERIFIED PETITION OF ALEXEY VASILYEVICH GRUDTSIN,**
**AS BANKRUPTCY TRUSTEE AND FOREIGN REPRESENTATIVE OF**
**CJSC AUTOMATED SERVICES (A/K/A ZAO AUTOMATED SERVICES),**
**UNDER CHAPTER 15 OF THE BANKRUPTCY CODE,**
**FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING**

Alexey Vasilyevich Grudtsin, as the duly authorized bankruptcy trustee and foreign representative (the "Foreign Representative") of CJSC Automated Services (a/k/a ZAO Automated Services) (the "Company"), a company organized under the laws of the Russian Federation and the subject of an insolvency proceeding (the "Foreign Proceeding") pending before the Arbitration Court of the City of Moscow (the "Foreign Court"), by his undersigned United States counsel, Dewey & LeBoeuf LLP, files this verified petition (the "Verified Petition") in furtherance of the

Official Form Petition (the "Petition") seeking entry of an order recognizing the Foreign Proceeding as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code (the "Bankruptcy Code") and granting relief under sections 1520 and 1521 of the Bankruptcy Code. In support thereof, the Foreign Representative respectfully represents:

**Preliminary Statement**

1. For the reasons set forth more fully below, the Foreign Proceeding is entitled to recognition as a foreign main proceeding, and consequently, the Foreign Representative is entitled to relief under sections 1520 and 1521 of the Bankruptcy Code. As also discussed more particularly below, the Foreign Representative hereby satisfies all of the requirements contained in sections 1515 and 1517 of the Bankruptcy Code for recognition of the Foreign Proceeding as a foreign main proceeding. In addition, contemporaneously herewith the Foreign Representative has filed a motion (the "Interim Relief Motion") seeking entry of an order granting interim relief pursuant to sections 1519 and 1521 of the Bankruptcy Code and Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Foreign Representative respectfully requests that upon this Court's recognition of the Foreign Proceeding as a foreign main proceeding, this Court grant the relief requested in the Interim Relief Motion on a permanent basis pursuant to section 1521 of the Bankruptcy Code.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

## Background

### I. Formation and Operation of CJSC Automated Services

3. The Company is a closed joint stock company organized under the laws of the Russian Federation in 2002, and is located in the City of Moscow at: Savvinskaya Embankment, Building 25-27, house 3, Moscow, 119435. The Company's main business was the acquisition, maintenance, and operation of computerized vending machines, and sales of foodstuffs and drinks through vending machines in the Russian Federation and surrounding regions.

4. Initially the Company was established by ZAO Al Rud, professional registration agents in the Russian Federation, under the name ZAO Rinuan. Subsequently, the shares of the Company were acquired by American Business Concepts LLC ("ABC"), and the Company was renamed as CJSC Automated Services (a/k/a ZAO Automated Services). ABC is a limited liability company organized under the laws of the state of Delaware on September 10, 2002. Its members are Joseph M. Loparco ("Loparco") and James M. Quinn ("Quinn").

5. Upon information and belief, Loparco was previously a distributor for Crane Merchandising Systems ("Crane"), a designer, manufacturer, and supplier of food and beverage vending machines. Crane is a Missouri corporation[1] and a subsidiary of Crane Co., a publicly traded corporation listed on the New York Stock Exchange. In addition, Loparco was employed as a consultant by food and beverage companies in connection with vending machine sales in the Russian Federation. Quinn has worked in the Moscow offices of Coca-Cola HBC Eurasia, OOO Kraft Foods, OOO Mercury Food and Beverages, and has extensive experience in the food and beverage industry in the Russian Federation.

---

[1] While the Crane Contract (as defined below) indicates that Crane is a Delaware corporation, the Missouri Secretary of State's records reflect that Crane is a Missouri corporation, and notably, the Delaware Division of Corporations contains no records evidencing Crane's existence.

3

6. Upon information and belief, in late 2002, Quinn and Loparco approached Leonid E. Pekker ("Pekker") and Oleg A. Kalaev ("Kalaev"), both of whom are Russian citizens, for assistance with financing, placement, and maintenance of vending machines in connection with the operations of the Company. In that regard, Quinn and Loparco proposed that Pekker and Kalaev each acquire 25% of the shares of the Company. On February 17, 2003, Pekker and Kalaev each purchased 25% of the shares of the Company. Following the purchase of the shares by Pekker and Kalaev, ABC, including its members Loparco and Quinn, owned 50% of the shares of the Company, Pekker owned 25% of the shares, and Kalaev owned 25% of the shares.[2]

7. The duties of the Company's four shareholders were allocated based on their respective experience. Thus, Loparco was responsible for the acquisition of equipment (*i.e.* vending machines), and was appointed Technical Director and Sales Director; Quinn was responsible for contacts with suppliers of goods and raw materials, and was elected Chairman of the Board of Directors for the Company; Pekker was responsible for governmental approvals and financing; and Kalaev was responsible for establishing and overseeing operations, and was appointed General Director, equivalent to a chief executive, of the Company. Thereafter, the Board of Directors of the Company was composed of Loparco, Quinn, Pekker, and Kalaev.

8. On June 20, 2003, ABC entered into an exclusive distributor agreement (the "ABC Distributor Agreement") with Crane National Vendors, a division of Crane Co. and an affiliate of Crane, providing ABC with exclusive rights to distribute Crane's vending machines, parts, and products in certain geographic regions. The Company had negotiated with Loparco and Quinn to assign ABC's distribution rights in the Russian Federation to the Company. Accordingly, Section 2.11 of the ABC Distributor Agreement specifically provides:

---

[2] Pekker purchased Kalaev's shares on December 27, 2005. Subsequently, Pekker became Chairman of the Board of Directors of the Company.

4

> Express Limitation on Authority. It is understood and agreed that [ABC] shall not have the authority to, and [ABC] hereby agrees that it will not, grant to any other person, firm or corporation any right, exclusive or otherwise, to market, promote or sell Crane Products at the same functional level of distribution as [ABC] without prior written express approval of Crane, with the exception of ZAO Automated Services, for which approval is hereby granted."

ABC Distributor Agreement ¶ 2.11. However, despite repeated requests by the Company, Crane, ABC, Quinn, and Loparco reneged on their agreement to transfer these distribution rights and ignored the Company's requests to effectuate such transfer.

9. Following negotiations conducted by Pekker and Kalaev with the Department of Education of the City of Moscow, on September 26, 2003, the City of Moscow issued a resolution awarding the Company an exclusive contract to operate cold beverage and snack vending machines in the secondary schools of the City of Moscow (the "Moscow Contract"). On November 20, 2003, the City of Moscow executed the Moscow Contract and Pekker signed the Moscow Contract as Chairman of the Board of Directors of the Company.

10. In order to meet its obligation under the Moscow Contract, Loparco recommended to the Company that it seek to enter into a contract with Crane for the purchase of its required vending machines.

11. Upon information and belief, Loparco, Quinn, ABC, and Crane thereafter engaged in a scheme to defraud the Company in connection with the contract with Crane. This scheme involved having the Company overpay for types of vending machines that did not meet its operational needs, and at the same time, involved the payment of a disguised kickback of over $2,000,000 that Crane paid to ABC and/or Loparco and Quinn.

12. Upon information and belief, the scheme was effectuated as follows. Loparco was responsible for negotiating the contract for vending machines purchased from Crane by the

Company. Loparco was well aware, based upon his discussions with the Company, that in order for the Moscow Contract to be profitable, the Company required vending machines with refrigeration features and variable layouts. However, Loparco negotiated an agreement with Crane for the purchase of vending machines without these features. Loparco then misled the Company into executing the contract in the belief that the vending machines it was ordering contained the features it required. The contract, dated February 27, 2004, is hereinafter referred to as the "Crane Contract."

13. To finance the equipment purchase from Crane under the Crane Contract, the Company entered into several credit agreements (the "Loan Agreements") with OJSC Vneshtorgbank ("VTB").

14. Upon information and belief, at the time of the execution of the Crane Contract or shortly thereafter, Crane paid ABC and/or Loparco and Quinn a kickback of $2,000,000 in connection with this transaction. Upon information and belief, the Company first became aware of the kickback in the spring of 2005 when Thomas Edwards, Crane's Vice President disclosed to Pekker that Crane had paid this $2,000,000 to ABC and/or Loparco and Quinn.

15. As a result of the actions of Loparco, Quinn, ABC and Crane, the Company a) overpaid by at least $2,000,000 for the vending machines it purchased, and b) received vending machines that did not meet its operational needs, or generate the cash flow that the Company required for its operations.

16. Upon information and belief, after Pekker confronted Loparco and Quinn with their malfeasance, Loparco and Quinn engaged in a further breach of their duties and obligations to the Company. Specifically, Loparco and Quinn caused several companies, including OOO Nestle Food, to withdraw from agreements reached with the Company. Upon information and

belief, Loparco and Quinn financially benefitted from the placement of this business with other vending companies.

17. As a result of the foregoing, the Company was damaged in at least the following respects. First, as the vending machines supplied by Crane under the Crane Contract did not include refrigeration features and variable layouts, the Company lost substantial revenues that it would otherwise have earned had the proper equipment been supplied. Second, as a result of the kickback scheme, the Company substantially overpaid for the vending machines that it acquired. Third, Loparco and Quinn diverted distribution revenues that ought to have been earned by the Company to their own company, ABC. Fourth, upon being confronted with their wrongdoing Loparco and Quinn caused several food and beverage companies in the Russian Federation to cease doing business with the Company.

18. As a result, the Company was compelled to default on its Loan Agreements with VTB, and ultimately was forced into the Foreign Proceeding.

## II. The Company's Foreign Proceeding

19. On May 23, 2007, the Company conducted a general meeting of shareholders (the "May 2007 Shareholders Meeting") attended by Quinn, on behalf of ABC, and by Pekker. At this meeting, Quinn and Pekker passed a resolution to commence a voluntary liquidation of the Company. Pursuant to the Federal Law of the Russian Federation "Law On Bankruptcy" (the "Russian Bankruptcy Law"),[3] the Company appointed a "liquidation commission." Under the laws of the Russian Federation, a bankruptcy case is commenced by the formation of a "liquidation commission" by the insolvent company. The liquidation commission then takes certain actions to commence insolvency proceedings, including filing a petition with an

---

[3] Attached hereto as Exhibit A is a translated copy of Articles 3, 4, 20, 26, 28, 45, 52, 53, 124, 126, 128, 224, and 225 of the Russian Bankruptcy Law.

7

arbitration court to issue an order declaring the company bankrupt pursuant to the Russian Bankruptcy Law. A translated copy of the minutes of the May 2007 Shareholders Meeting is annexed hereto as Exhibit B.

20. After determining that the Company could not pay its debts as they became due, the liquidation commission filed a bankruptcy application (the "Foreign Petition") with the Foreign Court on April 2, 2008 (the "Foreign Petition Date"), requesting that the Foreign Court declare the Company bankrupt, pursuant to the Russian Bankruptcy Law. A translated copy of the Foreign Petition is annexed hereto as Exhibit C. The Foreign Petition indicates that the Company has debts of RUB 467,364,367.77,[4] which was equivalent to $19,820,455.89 on the Foreign Petition Date, and assets of RUB 228,175,520.91,[5] which was equivalent to $9,676,695.87 on the Foreign Petition Date. Also, the Foreign Petition lists, in addition to VTB, over sixty other creditors, including taxing authorities of the Russian Federation.

21. The Foreign Court subsequently issued an order on June 4, 2008 (the "Foreign Court Order"), which declared the Company bankrupt in accordance with the Russian Bankruptcy Law and appointed Alexander A. Alyukayev ("Alyukayev") as its bankruptcy trustee. A translated copy of the Foreign Court Order is annexed hereto as Exhibit D. Thereafter, by order dated June 2, 2009 (the "Appointment Order"), the Foreign Court discharged Alyukayev as bankruptcy trustee and appointed the Foreign Representative to administer all insolvency proceedings outside the Russian Federation on behalf of the Company. A translated copy of the Appointment Order is annexed hereto as Exhibit E.

---

[4] Pursuant to exchange rates on September 29, 2009, the Company's debts on the Foreign Petition Date were equal to $15,476,410.01.
[5] Pursuant to exchange rates on September 29, 2009, the Company's assets on the Foreign Petition Date were equal to $7,555,856.12.

22. The Foreign Court Order enumerates a number of powers of the bankruptcy trustee, including the following: (i) to take possession of "all accounting and other documentation, seals, and stamps, tangible and other assets" of the Company, and (ii) to fulfill the requirements of Articles 28 and 128 of the Russian Bankruptcy Law, which includes publishing a notice in government publications that the Company commenced the Foreign Proceeding, that a bankruptcy trustee has been appointed, and describing the nature of the Foreign Proceeding.

23. The Company has several potential causes of action against parties located in the United States, including, among others, Loparco, Quinn, ABC, and Crane based on their actions described above. The Foreign Representative seeks to conduct discovery in order to investigate its potential claims against such parties and, if necessary, to prosecute claims against such parties. In addition, to the extent the Company has property in the United States, the Foreign Representative seeks to prevent Loparco, Quinn, ABC, and/or Crane or any other party from taking any action against the Company or its property during the course of this chapter 15 case.

24. The Foreign Representative believes that the Foreign Proceeding, with the assistance of this Court, offers the only practicable means of preserving the Company's assets in the United States and realizing recoveries on its potential causes of action in order to maximize recovery for the benefit of creditors in the Foreign Proceeding. Accordingly, the Foreign Representative concluded that relief under chapter 15 of the Bankruptcy Code is appropriate and therefore commenced this chapter 15 case.

25. In the interests of protecting the Company's assets and facilitating an expeditious proceeding, the Foreign Representative has, contemporaneously herewith, filed the Interim Relief Motion, which seeks interim authorization:

(i) to serve *subpoenae duces tecum* upon Loparco, Quinn, and representatives of Crane and ABC, for any documents, communications, and records relating to the facts set forth in paragraphs 3 through 18 of this Verified Petition which may lead to recoveries for the Company's creditors;

(ii) to serve notices of deposition of Loparco, Quinn, and representatives of Crane and ABC, relating to the facts set forth in paragraphs 3 through 18 of this Verified Petition which may lead to recoveries for the Company's creditors; and

(iii) to issue further subpoenas and to depose additional parties in the event that the Foreign Representative uncovers information indicating that additional parties have documents or information relating to the facts set forth in paragraphs 3 through 18 of this Verified Petition which may lead to recoveries for the Company's creditors.

**Relief Requested**

26. The Foreign Representative seeks the entry of an order, substantially in the form of the proposed order annexed hereto as <u>Exhibit F</u> granting recognition of the Foreign Proceeding as a foreign main proceeding, as defined in section 1502(4) of the Bankruptcy Code and relief under sections 1520 and 1521 of the Bankruptcy Code. In addition, as set forth above, the primary purpose of this chapter 15 case is to conduct discovery and pursue the Company's potential causes of action against persons and property located in the United States. Accordingly, the Foreign Representative requests that upon recognition by this Court of the Foreign Proceeding, this Court grant the relief sought in the Interim Relief Motion on a permanent basis pursuant to section 1521 of the Bankruptcy Code.

**Recognition of the Foreign Proceeding as a
Foreign Main Proceeding is Warranted**

27. Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if: "(1) such foreign proceeding for which recognition is sought is a foreign main proceeding . . . within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. §

1517(a). In addition, section 1517(b) of the Bankruptcy Code provides that a foreign proceeding shall be recognized "as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b).

I.   **The Foreign Proceeding is a Foreign Main Proceeding**

28.   The Foreign Proceeding is clearly a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code. Under section 101(23):

> [A] collective judicial or administrative proceeding in a foreign country . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). As set forth above, the Foreign Court entered orders declaring the Company bankrupt pursuant to the Russian Bankruptcy Law and appointing the Foreign Representative as bankruptcy trustee on behalf of the Company.

The articles of the Russian Bankruptcy Law annexed hereto as Exhibit A demonstrate that the Russian Bankruptcy Law is a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Company are subject to control or supervision by the Foreign Court. Article 45 of the Russian Bankruptcy Law provides for the appointment of a bankruptcy trustee upon entry of an order by the arbitration court declaring the company bankrupt. In addition, Article 126 provides that upon the commencement of a liquidation proceeding, among other things, an automatic stay goes into effect and creditors' claims are deemed null and void and may only be pursued through the arbitration court. Also, pursuant to Article 225, a debtor's assets are liquidated, subject to decisions of the arbitration court, in a manner which ensures a fair and equitable distribution to creditors. Specifically, upon the commencement of a liquidation proceeding, creditors' claims are set forth in an official register,

11

a meeting of creditors is conducted, and creditors' claims are ranked in accordance with their relative priority. The debtor's assets are subsequently distributed to creditors under the arbitration court's supervision. Accordingly, the Foreign Proceeding is a judicial proceeding within the meaning of section 101(23) of the Bankruptcy Code.

29. The Foreign Proceeding also qualifies as a "foreign main proceeding" under section 1502(4) of the Bankruptcy Code because the Foreign Proceeding is pending in the country where the Company has the center of its main interests. The Company is organized under the laws of the Russian Federation. It is located in the City of Moscow and its current address is Savvinskaya embankment, building 25-27, house 3, Moscow, 119435, and its business was conducted primarily from this address. Its books and records are located in the City of Moscow. Also, the Company was formed to sell, operate, and maintain cold beverage and snack vending machines primarily in the Russian Federation. Also, its most valuable asset was an exclusive contract with the Department of Education of the City of Moscow to provide vending machines in the secondary schools of the City of Moscow.

30. Based upon these factors, the Company has the center of its main interests in the Russian Federation and therefore, the Foreign Proceeding is a "foreign main proceeding," as that term is defined in section 1502(4) of the Bankruptcy Code. Accordingly, the requirements of sections 1517(a)(1) and (b)(1) of the Bankruptcy Code are satisfied.

## II. The Foreign Representative is a Foreign Representative under Section 101(24) of the Bankruptcy Code

31. The second requirement of section 1517 of the Bankruptcy Code is also satisfied because the Foreign Representative is a person appointed in a foreign proceeding to administer the Company's assets in liquidation, and therefore constitutes a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code. Section 101(24) of the Bankruptcy

Code defines a "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).

32. As described above, the Foreign Representative is the duly authorized bankruptcy trustee of the Company, is authorized to administer the Company's interests in proceedings in courts of the United States, and retains powers of administration over the United States interests of the Company. Thus, the Foreign Representative is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

### III. The Petition Meets the Requirements of Section 1515 of the Bankruptcy Code

33. The third requirement of section 1517(a)(1) of the Bankruptcy Code is satisfied and the Foreign Proceeding should be recognized as a foreign main proceeding because the requirements of section 1515 of the Bankruptcy Code are also met. Section 1515(b) of the Bankruptcy Code provides that a petition for recognition shall be accompanied by "(1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative; [or] (2) a certificate from the foreign court affirming the existence of such foreign proceeding and the appointment of the foreign representative." 11 U.S.C. § 1515(b). In addition, section 1515(c) of the Bankruptcy Code provides that "a petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. § 1515(c).

34. As noted above, annexed hereto as Exhibit D is a certified copy and English translation of the Foreign Court Order, which provides for the commencement of the Foreign Proceeding and the appointment of a foreign representative. In addition, the Appointment Order

13

is annexed hereto as Exhibit E, appointing the Foreign Representative as bankruptcy trustee in the Foreign Proceeding. The statement specifying all foreign proceedings with respect to the Company that are known to the Foreign Representative is also set forth in the Declaration of the Foreign Representative (i) in Support of the Verified Petition and (ii) Pursuant to Section 1515 of the Bankruptcy Code, filed simultaneously herewith. As set forth in the Foreign Representative's declaration, the Foreign Proceeding is the only foreign proceeding relating to the Company of which the Foreign Representative is aware. Thus, sections 1517(a) and (b) of the Bankruptcy Code are satisfied and the Foreign Proceeding should be recognized as a foreign main proceeding.

**The Interim Relief Should be Granted on a Permanent Basis**

35. As set forth in the Interim Relief Motion, section 1521(a)(4) of the Bankruptcy Code contemplates that a foreign representative conduct discovery pursuant to Bankruptcy Rule 2004. In addition, section 1521(a)(6) of the Bankruptcy Code specifically authorizes this Court's entry of an order "extending relief granted under section 1519(a)" upon recognition of the Foreign Proceeding. Further, granting this relief on a permanent basis is consistent with the goals of chapter 15, as required by section 1521(a), because such relief will aid the Foreign Proceeding and assist the Company to maximize recoveries for the benefit of creditors in the Foreign Proceeding. *See* 11 U.S.C. § 1501(a)(3) (among the objectives of chapter 15 is to contribute to the fair and efficient administration of cross-border insolvencies). Accordingly, the Foreign Representative requests that this Court grant the relief sought in the Interim Relief Motion on a permanent basis pursuant to section 1521 of the Bankruptcy Code.

**WHEREFORE**, the Foreign Representative respectfully requests that the Court grant the relief requested and such other relief as may be just and proper.

Dated: New York, New York
      October 9, 2009

/s/ Samuel S. Kohn
Lawrence A. Larose
Jonathan D. Siegfried
Samuel S. Kohn
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333

Attorneys for Alexey Vasilyevich Grudtsin, as Bankruptcy Trustee and Foreign Representative of CJSC Automated Services (a/k/a ZAO Automated Services)